183654 Good morning, your honors. May it please the court? I'm Ed Zas for Dustin Piper. The parties here agree that the district court committed multiple errors at Mr. Piper's sentencing. First, the court considered the wrong statutory range of imprisonment. The court thought the range was 0 to 20 years. It is, in fact, 0 to 10 years. And it's your position that somehow or another this affected the judge's decision as to what sentence to impose? I think there's a reasonable probability that if the judge had understood the correct range, she might well impose a lower sentence. Judge, what do you point to when you say that? So I read through the transcripts, and it's hard for me to discern where in the record you would be able to say, oh, that's where the district court judge increased the sentence. There's a reasonable probability or possibility that she increased the sentence based on a misunderstanding of the statutory maximum as opposed to some other misunderstanding. Your honor, I think you're right in terms of something specific that the judge said to indicate that she would have gone lower or something. We don't have that, but just to be clear, the test is a reasonable probability test because we're on plain error review. That does not require us to show that it's more likely than not that the judge would impose a different sentence. It's just a probability sufficient to undermine confidence. So if this were a guidelines case. Well, here, so the guidelines range was 63 to 78 months. The sentence imposed is 42 months, and I understand that there was a recommendation from probation of a 24-month sentence. I appreciate that. But this is not like the mandatory minimum cases that we've grappled with. This is more like the Third Circuit case, it seems to me, where there's a mistake about statutory maximum. Why shouldn't we proceed more along the lines of what the Third Circuit, the approach that the Third Circuit has adopted? Well, your honor, first, I think you should follow. We cite an unpublished case, but a Second Circuit case where I'd urge you to start, a case called Trudeau, where the district judge was under the misimpression about not the minimum but the maximum, and the court nevertheless found that there was a need for a remand. Remember that the statutory framework is in some ways more important than the guideline range. The guidelines are advisory, but here you have a key measure of the seriousness of the offense, which is a factor the judge must consider. Yeah, the judge is looking at this as a 0 to 20 crime when it's a 0 to 10 crime. And if you look at the imposed sentence of 42 months, it seems relatively lenient when you're looking at a 20-year max of 240 months. It's much less lenient when you look at the correct range, the correct maximum, which is 120 months. In your case, did the judge at least mention the statutory maximum? I'm sorry, are you asking in this case or in the other case? In the case that you're citing, because Trudeau was not the point you're trying to make. Yes, I believe the judge did. In this case, the judge didn't even mention it. Well, not quite correct. The judge did adopt the pre-sentence report, which states in two separate places incorrectly that the max is 20 years. In other words, there's no question he knew about it. I mean, there's no question he believed it was 20 years. It's she, Your Honor. It's Judge Donnelly. She read the PSR. There's no question about that. And not only the PSR, it's mentioned again in the sentence recommendation, which presumably is one of the more important things that the judge read. And I think the government very appropriately concedes that the district judge and the parties and probation were all laboring under the misperception. If I may, Judge Loy, coming back to your question, it's true. I mean, in some sense, we don't know if this actually affected the judge or not. But since we don't know, and since, as we point out in the reply brief, that the court needs to remand because there's a separate error about supervised release conditions, I think it would be appropriate, it would make common sense, to simply ask the judge. Since it has to go back anyway, the judge can tell us it will take her all of five minutes to say, oh, that may just make a difference. I'm sorry? Just make a difference. Does this make a difference? And if it doesn't, the judge can say that. It will take her five minutes to say that. But otherwise, you're risking a situation where it may have actually impacted the judge, and you'd be leaving in place a sentence that's higher than the judge might impose if she were under the correct impression. And so you're saying, you're suggesting that under the, well, we'll hear you on the conditions issue, but you're saying that if we were to agree with you on the conditions issue under the specific circumstances of this case, it's a why not remand on everything. That's right. I mean, the court has said that it doesn't apply the plain error doctrine as strictly when it comes to sentencing errors. And I think that principle applies with special force when the case already has to go back for other errors. Then it seems to me there's no real waste of resources. The judge can just either leave the sentence in place, or if it did make a difference, adjust it. But the court doesn't have to guess. So I'll just transition. Yes? Can you tell us about the special conditions? Yes. I was actually going to do the standard conditions first, but – Did one of the standard conditions get attached to the judgment? I'm sorry, Your Honor. I have a trouble hearing. The standard conditions were attached to the judgment. Is that how you discovered that they were wrong? The standard conditions are listed as part of the preprinted judgment form, and the judge signed that form. So it would seem to me that you could just, because it was a mistake that the judge didn't say it orally, that I adopt the 2015 rather than the 2016, that maybe you should tell us about the special conditions. What's wrong with that? Yes. So the special conditions we challenge can't amount to an occupational restriction because Mr. Piper was a teacher for about 17 years. And so these conditions, because he can't work with minors without special permission or an adult present, is effectively barred from returning to that career. And if you look at the applicable guideline, which is 5F1.5, when there's an occupational restriction, there's special findings that need to be made by the judge. In particular, the judge has to determine that the restriction is reasonably necessary to protect the public because there's reason to believe that absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted. Here there's no finding by the judge that Mr. Piper is likely to offend again. This was an aberration from his otherwise lawful life. The crime, you'll recall, was actually... Criminal history category one. Criminal history category one, no prior involvement with the criminal justice system at all. Is there not some evidence that he, or some reference to the fact that he claimed at least to have molested someone? There's allegations of that by someone who was also in the chat room. I think the government found him in Michigan. The district court specifically found that there was no evidence to support that, and I think the government also acknowledged that. So absent the finding that he's likely to reoffend, and there wasn't a finding made. Even if there was, I think there's probably a good argument that there's nothing to support that finding. I'm a little confused. Does this special condition mean that he can never teach again, or that he needs prior permission from the probation office to do it? As I understand the condition, for the five years he was on supervised release, because he can't be with minors absent both permission from the probation officer and a responsible adult present, I think it would be effectively impossible for him to be teaching. What you're saying is you want to remand for Judge Donnelly, it's Judge Donnelly, right? Yes. Either to provide more reasons or to withdraw that as a condition. That's correct. That's correct. And just to return to the standard conditions point, it's not just what the government calls a clerical error, because even under the current or correct version of the standard conditions, standard condition 12 is a condition that this court has already held is invalid. That's a condition that delegates to the probation officer the job to determine if the defendant should notify third parties of a risk. The court refers to it as a risk condition. So if that condition is going to be imposed, it needs to be the judge who has to decide first whether to impose it and how to craft it so it doesn't violate this court's ruling. So I think since the case has to go back for both either reconsideration or striking of the special conditions and reconsideration of the standard conditions, to me, the fair thing, the economical thing, to avoid the guesswork is while it's going back, just point out to Judge Donnelly that the max is 10 and she can let us know if that affects her sentence or not. While you preserve some time for rebuttal, we'll hear from the government audience. Thank you. May it please the court. My name is Jonathan Algor, and I'm an assistant United States attorney in the Eastern District of New York. I represent the United States here and as well below the district court. The district court's judgment should be affirmed, and I want to start with the special conditions. Start with the mistake about the mandatory remuneration. Okay, yes, Your Honor. So, Your Honor, I think as I don't know if Judge Parker has agreed, but as Laurier and Judge Eaton have referenced, there is no mention of the 10 of the 20. You should not mistake questions for agreement. Yes, Your Honor. So what? So, Your Honor, there's nothing in the record that shows that there's a reasonable probability that the sentence would have been different. Well, he didn't realize what the correct sentence minimum mandatory was. There was no reason for him to discuss it, for her to discuss it. Your Honor, but the lodestar, as this court and other courts have found, is the lodestar is the guideline range, which Judge Donnelly referenced, and then came with a below-guideline sentence of 42 months and considering the 3553A factors. And so when you look at that and you look at all the cases. I mean, I spent a lot of years sentencing people, and if there was one of the things I looked at and paid attention to was the minimum mandatory. And if it was 20 years and I was giving, you know, 30 months, I thought I was cutting someone a break. If it was five years and I was giving 40 months, different take on it. So this is relaxed, plain error. What is the government's objection to having Judge Donnelly say, would have given the same thing? You participated. You missed the mistake, too. Agreed, Your Honor. And it's relaxed, plain error. What's the problem with giving? It would take five minutes. Your Honor, because I think the record is already there that the 42 months was the appropriate sentence and that there was no reference, and so Judge Donnelly didn't make no reference to that statutory maximum being 20 years. No, I didn't. Again, Your Honor, I think that based on the record alone. I understand what the government's problem is. This would take five minutes. She could say, well, I would have given the same sentence, or she could have said, she could say, I will give this man less time than I did. And, you know, there's weight on no one but this defendant. Again, Your Honor, there are cases. You would have five minutes to go to the proceeding, right? Yes, Your Honor, but there are other cases where the statutory maximum has been wrong, and courts have found that. Which other cases in the Second Circuit? Trudeau, which Mr. Zass has pointed out, goes the other way. Now, you're going to have to explain to me why. Maybe I shouldn't ask you, but it seems to be on all fours. It's a summary order. We're not bound. The distinction of Trudeau is that the guidelines range was also wrong there. The guidelines range there was 210 to 262 months. And then absent a 30-year stat max in that case, it was 20 years. And so there, again, the guidelines range, which the anchoring of that was incorrect as well. And so there is a clear distinction. Is there a single Second Circuit case in which there was an erroneous statutory maximum, and we disregarded that and affirmed? There is not, Your Honor. There is not a case similar on all fours of that. As you can see, the all— so that if we were to disagree with the government on the special conditions issue or issues, then it's an administratively—I think you might agree, but you might not—easy fix to just say, you know what, while you're dealing with this case again on V-Man, why don't you just provide us with a little confidence that the sentence would not differ? Your Honor, so again, I would argue based on our arguments that the sentence is appropriate. But understand, if the— The issue is—you think it's appropriate, but the issue is whether once you bring one fact to Judge Donnelly's attention, she thinks it's appropriate. Yes, Your Honor. And so just to answer your question, I do think if you were to fine for the defendant, I think that would be appropriate that we would— Administratively. Administratively, yes, Your Honor. Okay. Let's get to the special conditions. Yes, Your Honor. So I think that when you look at the special conditions, these are not— Judge Donnelly established a well-founded record regarding each of these conditions. As Judge Donnelly explained, this was not a—this was not just a case about access with intent to view, but talked about the defendant's actions regarding that and the reasons for those. And so when Judge Donnelly, quote, described the—I'm sorry, Your Honor? No, I'm just looking at the guidelines. And so when Judge Donnelly recognized that this was just—it was commenting, and the defendant specifically was commenting on babies being raped and boasting in vile and graphic terms that the defendant had done so as well. He showed pictures of what he—what was purported to be his nephew and talked about his—about him sexually abusing that nephew, who was in the pictures a toddler and four or five years old. And so when Judge Donnelly was making these determinations about special conditions, she was not just considering just the charge itself, but the nature and circumstance of that offense, and in addition, the protection of the public. And can you provide reasons? Yes, Your Honor. Where are those? So first, that noted that—so just to— Appendix 91 and 92, Judge Donnelly found, because the defendant has shown a sexual interest in children, this condition is necessary to protect the public and is tailored and not a greater deprivation of liberty than necessary. The condition specifically allows that after a one-time approval probation, the defendant may have routine interactions at family functions or social gatherings with friends or children. And so that spoke— Can you repeat that? Yes, Your Honor. And so that goes— Explain to me how that would work in real life. If—you know, I don't know what school district would have in the bag, but assuming that was a possibility, if he gets permission from the probation office, could he do that, or does there have to be an adult, another adult in each classroom? How do you—what's your understanding? Yes, Your Honor. So under the conditions—first, to be clear, the defendant is not an actual teacher at a school district. It works for a nonprofit that works with youth. And so here, that condition with employment, one was to notify the employer because of the Internet use and computer. And so that condition is there. And then in addition, the condition is that it has to be notified of any individual under the 18 that the parent or guardian be notified. And so that would be a notification to the parents and guardians before that person—and working in that— and I see my time is up. If I could just finish this. Sure. I've got a few more questions. Go ahead. Yes, Your Honor. And that they be able to, once that notification was out, and that would be clarified through probation. So this would be a notification each time he has a contact with anyone under 18? Yes, Your Honor. So that would effectively mean he's barred from this job? No, I don't think so, Your Honor. So taking the situation of a class, a classroom, notify the parents or guardians of that classroom and— All 30 parents? Yes, Your Honor. And so one of them objects, he doesn't come in? No parent is good on that. I've got kids. No parent is going to object. Not going to object. Who's going to say yes to that? But I think that's part of Judge Donnelly's decision within protecting the public.  And it meets—and Judge Donnelly's— so to protect the public is from the sentencing guidelines section. I don't gainsay that, but I just wanted to be— I just didn't understand how the exceptions work. And that would be there. And so it's clear to me, and correct me if I'm wrong, that this is effectively a bar for working with children. Well, I mean, absent—I mean, Your Honor is suggesting that every parent would— you know, that if—I mean, I don't know the number. I don't have the details on the number of children that he interacts with. But if it was five—and you see, actually, his former employer, who filed a letter saying that she would take him back for employment. Exactly, Your Honor. You know, you referenced the defendant's, I gather, statements about his nephew. Is—and you're just going to have to help me with this. Is that not—aren't statements like that in the ordinary course in child pornography cases? No, I don't think it was in possession. This is similar to a possession case. This is access and intent to view. Here we have video of the defendant, though, making these statements. And not only about that he was— That's a slightly aggravating factor. Yes, Your Honor. I think that's— That supports— That supports Judge Donnelly's consideration. It not only is that, but also the defendant, when the first video, which was a two-year-old male toddler, you know, the defendant made statements talking about slathering his tongue over his wet, dripping cock and sticking my finger, and those types of statements that were aggravating comparatively, which is in the PSR at paragraphs 11 and 13, and which is distinct from a possession case where there may be, you know, videos of adolescents, but there's not these aggravating factors talking about— and the need to protect the public based on the defendant's statements. And if Your Honors have any other questions. Thank you. Thank you. Thank you, Your Honors. If I could just start with the special condition of supervised release. The government told you that it was a well-founded record, but what they didn't mention, and they can't point to, is the finding that Section 5F1.5 of the guideline requires. 5F1.5A2 requires the judge to make a finding that absent the restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted. So why isn't it enough that page 88 of the transcript just soundly says, the defendant participated in a group viewing of babies being sexually abused by adults, babies who appear to have been drugged, not just viewing, but commenting on what they would do, including this defendant, to those same children. And that precedes the finding, the imposition of the special condition that we're talking about. And she refers to the fact, you know, expresses remorse, but it has become a community where this is acceptable and encourages its members to share and creates an incentive to locate or create increasingly violent and unspeakable sexual assaults. The children in these videos are real babies. So that's, again, a reference to the chats and what he does or did. And immediately after that, she imposes the special condition. That's usually in the ordinary course, but certainly on plain error review, that would be enough. Respectfully, Judge, I don't think so. The guideline is very specific on this. The court has to find not that the conduct was gross or offensive or criminal, but that there's a likelihood of recidivism. Because, you know, the whole purpose of supervised release is to integrate the offender back into the community. It's very hard to do that, not only if you're branded a sex offender for the rest of your life, but you can't get a job. The defendant has shown a sexual interest in children. This condition is necessary to protect the public. That's not enough, you're saying. Well, that would cover, I think, every child pornography offender. They all have a sexual interest in children. This defendant, there's no connection, unless the court is going to assume without evidence in the record, that if you view child pornography for this defendant for 45 minutes in a chat room, that that necessarily has a relationship not only to real-world conduct, but his profession as a teacher. He's got 17 years of not a single complaint. Now, I'm not saying, we're not asking you to strike it. We're just asking you to send it back for the judge to consider whether this finding should be made and whether the condition. It would be enough for Judge Donley to just articulate the words in 5F1.5A2. I don't know, articulate the words. If she made a factual finding. That's what you told me before. Well, I'm trying to preserve my right if she made a factual finding. To come back to you and tell you that it was clearly erroneous. But the court doesn't need to go there. At the moment, just on the prison term, I did get a chance to look back at Trudeau. And that was a case where the judge, or at least the PSR, stated that the max was 30. It was, in fact, 20. And what's significant to me is that this court is not concerned about whether the sentence that was imposed is far below or far above the minimum. I think the court. I'm not saying minimum is a different matter. But we're talking about the maximum, it seems to me. Well, it's different. But I don't think it's materially different for these purposes. I think the court has recognized that, as Judge Parker pointed out, I thankfully have never sentenced anyone. But I would think that some judges, just like some judges give more weight to the guidelines than some don't, some judges may give more weight to the range than others. The maximum is a marker for how serious Congress feels this crime, believes this crime to be. Yes. I mean, the Supreme Court tells us that. And a judge certainly could reasonably view a 0 to 20 crime as much more serious than a 0 to 10 crime. In our view, the question seems to me is, you know, is there a presumption? So if there's silence on the record, then maybe the presumption should favor the government as opposed to the defendant. If there's some articulable reference to the statutory maximum that may be affected the district court judge, then maybe, you know, make a point. Let me just close by answering that point in two ways. First, the guidance we get from the Supreme Court, which does deal with guidelines, but the Supreme Court has said if the record is silent and the court applies the wrong guideline range, that is ordinarily enough. Even under plain error view to warrant a remand. And that is because the guidelines have an anchoring effect and are required to have to be the anchor. That's right. We have not said that. The Supreme Court has not said that with respect to the statutory maximum or minimum. Well, but there are courts who have said it. And it seems to me just logically that if the guidelines have an anchoring effect but they're only advisory, the statutory range has at least that effect. Or at least we don't know because Judge Johnley didn't address what weight she was giving to the range. But my second point goes back to the administrative common sense point. That if the court agrees it has to go back for another reason, we can find out for sure if the error affected the sentence or not. And I think that's preferable than potentially leaving someone in prison for more months or potentially more years than the judge would impose under a correct understanding. How long has he been in prison? He had a 42-month sentence. He's due to be released in January of next year. But I understand he's doing very well in a residential drug program, which if he completes it successfully could result in an actual release sooner. Thank you very much. Thank you. Full reserve decision.